1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   V. STEVEN BOOTH,                         CASE NO. CV-F-08-1912 LJO GSA

11            Plaintiff,                      **ORDER ON DEFENDANTS'**
                                              **MOTION TO DISMISS**
12            v.

13   SCOTT CARVELL, AL ROGERS,

14            Defendants.
     _____/

15

16          By notice filed on April 27, 2009, defendants Scott Carvell and Al Rogers move pursuant to Rule

17   12(b)(6) to dismiss the plaintiff's First Amended Complaint ("FAC"). Plaintiff V. Steven Booth filed

18   an opposition on September 10, 2009.  Defendants filed a reply on September 18, 2009.  The hearing

19   was VACATED pursuant to Local Rule 78-230(h). Having considered the moving, opposition and reply

20   papers, as well as the Court's file, the Court issues the following order.

21                              **FACTUAL OVERVIEW**

22          Plaintiff Steven Booth alleges that on April 15, 2008, a search warrant was served at his place

23   of business. (Doc. 12, FAC ¶ 7.)  He alleges that the warrant failed to identify any purported violations

24   of the law, that it did not have an affidavit supporting the warrant and that the warrant was not served

25   on him. (Doc. 12, FAC ¶ 8.)  The warrant provided for seizure of specified business records of plaintiff's

26   business entity.  Plaintiff alleges the warrant was overbroad because it permitted seizure of "virtually

27   any document found and any computer equipment and software, business licenses, financial agreements,

28   postal mail, rolodex cards, publications (including some made by plaintiff) and more for an unlimited

                                              1

time frame." (Doc. 12, FAC ¶¶ 9-10.)  He complains also that the warrant allowed the defendants to seize one patient file and other "documents that would list patient names." (Doc. 12,  FAC ¶ 11.) Plaintiffs claims that the warrant was not regular on its face, given the breadth of the items required to be seized by the warrant, and that seizure of the listed items somehow violated the First Amendment and the doctor-patient confidentiality. (Doc. 12, FAC ¶ 12.)  Plaintiff claims that defendants Carvel and Rogers executed the unlawful warrant and in doing so conducted an extensive search of his business premises and seized "numerous documents and items of property." (Doc. 12, FAC ¶ 13.) Finally, Booth claims that statements provided by people present at the scene of the search were "misleading or outright false statements." (Doc. 12, FAC ¶ 16.)

Plaintiff sues for constitutional violations pursuant to 42 U.S.C. § 1983, alleging that the search warrant was overbroad, facially invalid, and based on fraudulent affidavits.   Plaintiff alleges the following causes of action:

1. First Cause of action for unreasonable search and seizure in violation of the Fourth Amendment.

2. Second Cause of Action for unreasonable search and seizure based on false information in violation of the Fourth Amendment.

3. Third Cause of Action for interference with First Amendment Association, Freedom of Speech and Press Rights.

4. Fourth Cause of Action for interference with state law First Amendment Association Freedom of Speech and Press Rights.

5. Fifth Cause of Action for failure to instruct, supervise, control and discipline.


Defendant moves to dismiss the First Amended Complaint on the grounds that:

1. The Court lacks subject matter jurisdiction to review the lawfulness of the Kern County Superior Court action in issuing the warrant.

2. The *Parratt* Doctrine requires dismissal of the federal law Due Process claims.

3. The search warrant is valid on its face.

4. Defendants Carvel and Rogers are immune from liability for executing the search

1      warrant.

2      5.     Plaintiff has no causes of action directly under the California Constitution for violations

3      of Article 1 §§7 and 13.

4      6.     Plaintiff cannot state a claim for "interference with state law association, freedom of

5      speech and press rights."

6      **ANALYSIS AND DISCUSSION**

7      **A.**     **Standard for Motion to Dismiss**

8      A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

9      pleadings set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either

10      a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

11      theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion

12      to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint

13      in question, construes the pleading in the light most favorable to the party opposing the motion, and

14      resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir.

15      2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

16      To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief

17      that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

18      A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw

19      the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S.

20      –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual

21      content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

22      the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.2d 962, 969 (9th Cir. 2009).

23      A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences

24      and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*

25      *American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint attacked

26      by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

27      to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

28      formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct.

1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when

construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a

cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In

practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material

elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127

S.Ct. at 1969.  If a plaintiff fails to state a claim, a court need not permit an attempt to amend a

complaint if "it determines that the pleading could not possibly be cured by allegation of other facts."

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**B.    *Rooker-Feldman* Doctrine**

Defendants argue that this Court lacks subject matter jurisdiction to review the lawfulness of the

warrant issued by the Kern County Superior Court.  Defendants argue that the judges of the Kern County

Superior Court determined that the warrant was valid and should be served.  Defendants argue that the

*Rooker-Feldman* doctrine prohibits a party in a state court action from seeking review of the state court

judgment in federal court.  (Doc. 17, Moving papers p.3-4.)

Pursuant to the *Rooker-Feldman* doctrine Federal courts lack jurisdiction to review or modify

state court judgments.  *See Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149 (1923);

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983).  The

*Rooker-Feldman* doctrine is based on 28 U.S.C. § 1257 which grants the United States Supreme Court

jurisdiction to review decisions of the highest state courts for compliance with the federal Constitution.

*See Rooker*, 263 U.S. 413, 44 S.Ct. 149; *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303.  The doctrine

provides that "lower federal courts do not have jurisdiction to review a case litigated and decided in state

court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried

v. Medical Planning Services*, 142 F.3d 326, 330 (6th Cir.), *cert. denied,* 525 U.S. 1041 (1998).  "This

is equally true in constitutional cases brought under [28 U.S.C.] § 1983, since federal courts must give

'full faith and credit' to the judicial proceedings of state courts.'" *Gottfried*, 142 F.3d at 330 (citing 28

U.S.C. § 1738).

A federal court lacks subject matter jurisdiction to review final determinations of state courts and

claims "inextricably intertwined" with final state court decisions, even if such "inextricably intertwined"

4

claims were not raised in state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483-487 and n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th Cir. 1998) (holding the *Rooker-Feldman* doctrine is jurisdictional). A federal district court is a court of original jurisdiction and has no authority to review final determinations of state courts. *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986); *Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles*, 23 F.3d 218, 221 (9th Cir. 1994). "[A] losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-1006 (1994).

Here, the *Rooker-Feldman* doctrine does not apply. The subject matter of this case involves the validity of a warrant, not the final determination of a state court judgment. Defendants analogize a search warrant with that of a state court judgment. Defendants argue that the "judges of the Kern County Superior Court determined the warrant was valid and should be lawfully served." The issuance of a warrant is not comparable to the adjudication of a dispute resulting in a state court judgment. Indeed, the cases cited by defendants do not stand for the proposition that an issuance of a search warrant, for investigation of criminal activity, equates to a state court judgment. For instance, in *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir. 1986), plaintiffs brought § 1983 action, contending that state court jury verdict against them for defamation was unconstitutional. *McNair* involved a judgment of the state court. In *Busch v. Torres*, 905 F.Supp. 766 (C.D.Cal.,1995), plaintiff brought a §1983 action after being evicted when the sheriff executed a writ of possession for the premises, which was obtained following a state court unlawful detainer action. In *Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles,* 23 F.3d 218, 221 (9th Cir. 1994), the Court noted that federal courts "have jurisdiction over a general constitutional challenge that does not require review of a final state court decision in a particular case." The Court also acknowledged that "[t]his distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle, and difficult to make." *Id.*

Defendants have not cited any authority in which the *Rooker-Feldman* doctrine was employed

1   in a factually similar case.  A determination by a state court judge that probable cause existed to issue

2   a warrant for investigation of criminal activity is not the same as a state court final judgment.  In issuing

3   the warrant, the Court did not adjudicate the constitutionality of conduct under the Fourth Amendment,

4   but merely decided that probable cause existed based upon the facts.  Thus, the allegations of the

5   complaint do not require reviewing "a final state-court judgment in a particular case." *Feldman*, 460

6   U.S. at 486-88, 103 S.Ct. at 1317-18.  The *Rooker-Feldman* doctrine is inapplicable.

7   **C.    *Parratt v. Taylor* Doctrine**

8        Defendant argues that Due Process claims must be dismissed because there is adequate post-

9   deprivation procedures available under California law.  Defendant argues that under *Parratt v. Taylor*,

10  451 U.S. 527, 540 (1981), post-deprivation procedures are sufficient to satisfy due process.  Defendant

11  argues that California provides post-deprivation procedures for challenging the seizure, citing Cal. Pen.

12  Code §§1536.5, 1538.5, 1539.  Cal. Pen. Code §1536.5 permits a person to demand copies of the

13  business records seized.  Cal. Pen. Code § 1538.5 permits a person to move the court to return the

14  property seized or suppress the evidence. Cal. Pen. Code § 1539 permits a special hearing on the motion

15  for return of property or suppression of evidence.

16       As a general proposition,  *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420

17  (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88

18  L.Ed.2d 662 (1986), holds that where a plaintiff is asserting the deprivation of life, liberty, or property

19  without due process, the availability of an adequate state remedy will be relevant to the basic question

20  of whether plaintiff has alleged the violation of any federal constitutional right.

21       Plaintiff, however, challenges a violation in issuing the search warrant.  Plaintiff seeks to protect

22  the right against unlawful search and seizure, not the protection of the actual property taken.  The right

23  sought to be protected is a federal constitutional right against unlawful search and seizure.  Defendant

24  has not cited any authority that the California procedure is the exclusive means for adjudicating alleged

25  Constitutional violations.

26  **D.    The Search Warrant**

27       The Fourth Amendment establishes the right "to be secure in . . . persons, houses, papers, and

28  effects, against unreasonable searches and seizures" and mandates issuance of warrants with "probable

6

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Plaintiff alleges that the warrant was invalid on its face and overbroad under the Fourth Amendment**.**

### 1.    Search Warrant Standards - Probable Cause

California Penal Code section 1524(a)(4) authorizes a search warrant's issuance when "the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony."  In assessing whether a warrant passes constitutional muster, a court is obliged to make two inquiries: first, whether the scope of the search authorized by the warrant was justified by probable cause and, second, whether the warrant was sufficiently particular to limit the discretion of the officers executing it.  *In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 856 (9th Cir. 1997).

In making a probable cause determination, a court's role is to ensure that the judge issuing the search warrant had a "substantial basis" to conclude probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332 (1983); *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362 (1985).  "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

"[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584 (1969)).  "The facts . . . must be sufficient to justify a conclusion . . . that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued." *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968).  In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.

6, 98 S.Ct. 1970, 1976-1977 & n. 6 (1978); *United States v. Lalor*, 996 F.2d 1578, 1582 (9th Cir.), *cert. denied*, 510 U.S. 983, 114 S.Ct. 485 (1993). "The magistrate making the original determination of probable cause is accorded significant deference by the reviewing court." *United States v. Fulbright*, 105 F.3d 443, 452 (9th Cir. 1996), *cert. denied,* 520 U.S. 1236 (1997).

Here, plaintiff does not appear to allege that the warrant lacked probable cause. The allegations appear to target the format and wording of the warrant. "The purported warrant cited no alleged violations of any laws, and no affidavit in support of the warrant accompanied it at the time of execution or was ever served on plaintiff at any time." (Doc. 12, FAC ¶8.) The FAC also challenges the scope of the documents listed in the warrant to be seized: "The warrant purported to authorize the seizure of virtually any document found . . .;" and "[i]t also purports to authorize seizure of any letters, memoranda . . ." (Doc. 12, FAC ¶¶9-10.) Thus, the Court turns to the second issue of whether the warrant was sufficiently particular to limit the discretion of the officers executing it.

### 2.   OverBreath of a Search Warrant - Facial Validity

The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized. *U.S. v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). A valid warrant must describe particularly the places that officers may search and the types of items that they may seize. *Dawson v. City of Seattle,* 435 F.3d 1054, 1064 (9th Cir. 2006). "This requirement exists to prevent general, exploratory searches and indiscriminate rummaging through a person's belongings." *Dawson v. City of Seattle*, 435 F.3d at 1064.

The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. *Spilotro*, 800 F.2d at 963. The standards for measuring the specificity of a warrant are the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *Spilotro*, 800 F.2d at 963. If a business is a legitimate one, the government must establish with specificity those documents to be seized from a warranted search of that otherwise-lawful

business.  *See*, *e.g.*, *United States v. Kow*, 58 F.3d 423, 427-28 (9th Cir.1995) (holding that a warrant was overbroad because it authorized the seizure of virtually all of a business's records, even though the government had evidence that would have supported a more particularized warrant); *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir.1989) (holding a warrant to be overbroad because it allowed the seizure of records relating to all of a gallery's artwork, rather than just the artwork by Salvador Dali that was under suspicion), *overruled on other grounds*, *J.B. Manning Corp. v. United States*, 86 F.3d 926, 927 (9th Cir.1996).

Here, the warrant was phrased with specificity in the categories of documents, and relationship between the documents, which were subject to the search.  For instance, the document categories had qualifying language such as documents "that would tend to establish a business relationship" between the business and specific people identified in the warrant. (Doc. 23, Warrant, attachment 5.) The warrant also included other qualifying language such as documents, "which show an indicia of ownership and occupancy."   This warrant language arguably sets out objective standards by which officers could "differentiate items subject to seizure from those which are not." *Spilotro*, 800 F.2d at 963. Nonetheless, some of the language may be overly broad.  The warrants calls for a seizure of "electronic storage devise capable of storing electronic data," or "contracts, marketing materials. . ."  The only possible criminal activity, from the face of the warrant, is "fraud."  The warrant mentions potential "fraud," but the link between the activity and the documents may arguably be absent.  Further, the Court cannot determine from the evidence whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.  In *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982), the Ninth Circuit held that a warrant must contain information "limiting the search to evidence of particular criminal episodes."

At this point in the litigation, the Court cannot rule that the warrant is facially valid as a matter of law.  The Court cannot determine whether the warrant was sufficiently narrow under constitutional standards (i.e., not overbroad).  In addition, the Court cannot rule as a matter of law because the entirety of the warrant and supporting affidavits are not before the Court.  The warrant references additional "attachments" which are not before the Court.  The warrant references affidavits which are not before the Court.  Accordingly, the motion to dismiss on the grounds that the warrant is facially valid is denied.

1       **3.**       **Challenges pursuant to Illegal Search and Seizure**

2       Here, plaintiff appears to name the officers who executed the warrant as defendants. While the

3 allegations are unclear, it appears the defendants' roles were limited to that of the executing officers.

4       A search conducted pursuant to a warrant generally may not be challenged unless the lack of

5 probable cause was so apparent that the officer should have known it was absent. *Greenstreet v. County*

6 *of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994). Inadequate probable cause for a warrant does

7 not necessarily render an executing officer's reliance unreasonable because the existence of probable

8 cause is often a difficult determination. *Ortiz v. Van Auken*, 887 F.2d 1366, 1370-71 (9th Cir.1989). As

9 a general matter, the Constitution does not require the executing officers to "second-guess the legal

10 assessments of trained lawyers." *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir.1985), *cert.*

11 *denied*, 475 U.S. 1010 (1986); see also *United States v. Leon*, 468 U.S. 897, 921, 104 S.Ct. 3405, 82

12 L.Ed.2d 677 (1984) ("In the ordinary case, an officer cannot be expected to question the magistrate's

13 probable-cause determination or his judgment that the form of the warrant is technically sufficient").

14 *See United States v. Whitworth*, 856 F.2d 1268, 1280 (9th Cir.1988) (viewed in context of all the

15 provisions, a catch-all provision did not render the search warrant overbroad), *cert. denied*, 489 U.S.

16 1084 (1989); *see also United States v. Whitten*, 706 F.2d 1000, 1009 (9th Cir.1983) (upholding warrant

17 authorizing seizure of items indicating ownership or control of premises), *cert. denied*, 465 U.S. 1100

18 (1984).

19       Determining whether certain facts constitute probable cause differs from ascertaining whether

20 a warrant is so facially overbroad that it precludes reasonable reliance. *Leon*, 468 U.S. at 921, 104 S.Ct.

21 at 3419. Inadequate probable cause does not necessarily render a warrant facially invalid nor prevent

22 reasonable belief in the existence of probable cause. *Leon* emphasizes that generally "an officer cannot

23 be expected to question the magistrate's probable-cause determination."

24       Here, plaintiff has alleged that Scott Carvell and Al Rogers are sued in their individual capacities.

25 The allegations do not clearly state what conduct Scott Carvell and Al Rogers engaged in, but apparently

26 they are the officers who executed the warrant. (Doc. 17, Defendants Moving papers p.1:18-21.) The

27 warrant was issued based upon the investigation of Investigator Darrel L. Tully. (Doc. 23, Warrant p.

28 5 of 11.) The warrant identified that, " Based upon the good cause shown in the affidavit in support of

1 this search warrant prepared and sworn to by Investigator Darrel L. Tully, I hereby order that the court

2 file containing the affidavit for this search warrant be sealed pending further hearing and order of this

3 Court."  The warrant was signed by a Judge of the Superior Court of the County of Kern.  (Doc. 23,

4 Warrant.)

5      What is reasonable for a particular officer depends on the officer's particular role in the search.

6 *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002), *cert. denied,* 537 U.S. 1231

7 (2003). As the Ninth Circuit has explained:

8     Because searches often require cooperation and division of labor, officers' roles can vary
9 widely. Typically, only one or a few officers plan and lead a search, but more--perhaps
many more--help execute it. The officers who lead the team that executes a warrant are
responsible for ensuring that they have lawful authority for their actions. A key aspect
10 of this responsibility is making sure that they have a proper warrant that in fact authorizes
the search and seizure they are about to conduct. The leaders of the expedition may not
11 simply assume that the warrant authorizes the search and seizure. Rather, they must
actually read the warrant and satisfy themselves that they understand its scope and
12 limitations, and that it is not defective in some obvious way.

13 *Ramirez v. Butte-Silver Bow County*, 298 F.3d at 1027 (citations omitted); *See United States v. Leon*,

14 468 U.S. 897, 922-23, (1984) (search pursuant to a warrant is invalid if no reasonable officer could have

15 believed the warrant was valid).  As further explained by the Ninth Circuit:

16     Line officers, on the other hand, are required to do much less. They do not have to
actually read or even see the warrant; they may accept the word of their superiors that
17 they have a warrant and that it is valid. So long as they 'make inquiry as to the nature and
scope of [the] warrant, their reliance on leaders' representations about it is reasonable.

18

19 *Ramirez v. Butte-Silver Bow County*, 298 F.3d at 1027 (citations omitted).

20      Here, the allegations as to the role of the defendants are factually insufficient.  The allegations

21 do not identify what the officers did, and fail to identify the wrongful conduct by each defendant.  The

22 allegations fail to identify the conduct by the defendant for which plaintiff seeks to hold them liable.

23 *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009) ("Plaintiff's

24 amended complaint should be brief, Fed.R.Civ.P. 8(a), but must state what each named defendant did

25 that led to the deprivation of Plaintiff's constitutional or other federal rights").  Accordingly, the motion

26 will be granted as to the first and second causes of action for leave to amend consistent with this order.

27 /////

28 /////

1          **4.      Qualified Immunity**

2          Defendants argue that defendants Carvel and Rogers are immune from liability for executing the

3    search warrant.  Defendants argue that California Penal Code §1523 commands a police officer to search

4    for the things identified in the search warrant and they were obligated to serve the search warrant.

5          Where a constitutional violation occurs, a police officer is entitled to qualified immunity if he

6    acted reasonably under the circumstances.  *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9ᵗʰ Cir. 2007);

7    *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir.2009) (Where a constitutional

8    violation occurs, a police officer is entitled to qualified immunity if she acted reasonably under the

9    circumstances). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272,

10   outlined a two-step approach to qualified immunity. The first inquiry is whether "[t]aken in the light

11   most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

12   a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If the answer to the first inquiry is yes, the second

13   inquiry is whether the right was clearly established: in other words, "whether it would be clear to a

14   reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct.

15   2151.  Recently, the Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d

16   565 (2009), held that "judges of the district courts and the courts of appeals should be permitted to

17   exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis

18   should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The

19   Supreme Court further stated that "the judges of the district courts and the courts of appeals are in the

20   best position to determine [what] order of decisionmaking will best facilitate the fair and efficient

21   disposition of each case." Id. at 821.

22         Based on the allegations in the complaint, the officers reasonably relied on the approval of the

23   search warrant by a judge.  The exhibit to the complaint shows that the warrant was presented to and

24   signed by a state court judge, and plaintiff does not allege that there were any irregularities in the

25   processing of the warrant. Accordingly, if the officers are merely the executing officers, the officers may

26   be immune under the second prong of the *Saucier* test.  The Court, however, cannot grant immunity at

27   this point because the allegations are unclear as to the role the officers played in the search.

28   /////

1    **E.      The Third, Fourth and Fifth Causes of Action Do Not Satisfy Federal Pleading Standards**

2             **1.       Pleading Standards as Set Forth in *Ashcroft v. Iqbal***

3            The Supreme Court, in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

4    clarified *Twombly*'s reach in evaluating pleadings. *Iqbal* concerned claims against a number of

5    defendants, including FBI Director Mueller and Attorney General Ashcroft, made by Javaid Iqbal, a

6    Muslim Pakistani who was part of the mass roundup of Muslim aliens on immigration charges following

7    the September 11 attacks. *Iqbal* claimed that Mueller and Ashcroft were responsible for selectively

8    placing detainees in their restrictive conditions on account of their race and religion. *Id.* at 1951. The

9    Supreme Court found the allegations in the complaint insufficient to state a discrimination claim under

10   the above-discussed *Twombly* "plausibility" standard. *Id.* at 1952. The Court held that a pleading "that

11   offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " is

12   insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 1949 (quoting

13   *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

14           The Supreme Court stated the analysis is to "begin by identifying pleadings that, because they

15   are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1937.

16   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

17   not suffice." *Id.* at 1949. The next step is to consider the factual allegations in the complaint to determine

18   if they plausibly suggest an entitlement to relief. *Id.* at 1951. "A claim has facial plausibility," the Court

19   explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable

20   inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949.

21           **2.       The Allegations do not meet the *Iqbal* Standard**

22           The allegations in plaintiffs' third cause of action for interference with First Amendment

23   Association, Freedom of Speech and Press Rights are insufficient under *Iqbal*.  The allegations

24   incorporate all preceding allegations and allege documents were seized that were "related to plaintiff's

25   exercise of this right of association with other, free speech, and free press rights protected under the First

26   Amendment." (Doc. 12, FAC ¶20.)  This conclusory allegation does not state a claim.  There is no

27   factual matter which relates the conduct with violations of association, speech or press.  Accordingly,

28   the third cause of action fails to state a claim.

1    The fourth cause of action for violation of state protections for right of association, free speech

2  and free press also fails.  Plaintiff merely incorporates the preceding allegations without any factual

3  support.  For the same reasons that the third cause of action fails, the fourth cause of action also fails to

4  state a claim.

5    The fifth cause of action for failure to instruct, supervise, control and discipline is equally

6  insufficient under *Iqbal*.   The claim incorporates all preceding allegations and states in a conclusory

7  fashion:

8    27.    Acting under color of state law, the unknown DOE superiors and supervisors
            intentionally, knowing, recklessly and with deliberate indifference to the rights
9          of the inhabitants of the area failed to instruct, supervise, control and/or
            discipline the defendants who executed the warrants to refrain from conducting
10         unlawful searches and seizures, and conspiring to violate federally protected
            rights, and otherwise depriving citizens of their constitutional and statutory
11         rights, privileges and immunities.

12   28.    Defendant unknown DOE superior and supervisors had knowledge or should
            have had knowledge that the wrongs alleged herein, or other unlawful,
13         unconstitutional acts were going to be committed and had the power to prevent,
            or aid in preventing, the commission of said wrongs, could have done so, and
14         intentionally, knowing or with deliberate indifference to the rights of inhabitants
            of the area, failed or refused to do so.  (Doc. 12, FAC ¶¶27-28.)

15

16    Plaintiff has failed to allege any factual support for his claims of supervisor liability under section

17  1983. Supervisors can be held liable under § 1983 for: (1) their own culpable action or inaction in the

18  training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation

19  of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the

20  rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (citing *Larez v. City of*

21  *L.A.*, 946 F.2d 630, 646 (9th Cir.1991)). "Government officials may not be held liable for the

22  unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal,* 129 S.Ct.

23  at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own

24  misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own

25  individual actions, violated Plaintiff's constitutional rights.  Plaintiff has alleged no facts indicating any

26  personal involvement by defendants. The fact that each of the DOE defendants holds a supervisory

27  position alone, does not render them liable for conduct of their staff.  The fifth cause of action alleges

28  no more than what the Supreme Court explicitly warned against, "a plaintiff armed with nothing more

1  than conclusions." *Iqbal*, 129 S.Ct. at 1949.  These claims are factually insufficient pursuant to the *Iqbal*

2  standard.

3       Further, the Court questions whether the third, fourth and fifth claims are "facially plausible" to

4  survive the second step in the *Iqbal* analysis.  The complaint's "non-conclusory factual content, and

5  reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff

6  to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks

7  omitted), citing *Iqbal*, 129 S.Ct. at 1949, ("A claim has facial plausibility," the Court explained, "when

8  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9  defendant is liable for the misconduct alleged.")  Here, the Court questions whether these claims could

10  be alleged with facial plausibility.

11       Nonetheless, the Court will grant a further attempt to amend the complaint to allege factually and

12  plausibly suggestive claims.  Courts are free to grant a party leave to amend a complaint whenever

13  "justice so requires." Fed.R.Civ.P. 15(a)(2). " 'Dismissal without leave to amend is improper unless it

14  is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Gompper v.

15  VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467,

16  1472 (9th Cir. 1991)).  Because Plaintiff may be able to add factual content to his complaint such that

17  it states a claim on which relief can be granted, the Court grants him leave to do so.

18  **E.**    **No Damages for California Constitutional Violations**

19       The California Supreme Court has ruled that the California Constitution does not provide a direct

20  cause of action for damages for a due process or free speech violation.  *Katzberg v. Regents of University

21  of California*, 29 Cal.4th 300, 127 Cal.Rptr.2d 482 (2002) (the California Supreme Court declined to

22  recognize a constitutional tort to remedy the asserted violation of Art. 1, § 7(a) in the absence of a

23  statutory provision or common law tort authorizing such a remedy.)  State courts have expressly rejected

24  state constitutional damage claims for violation of the due process and free speech clauses.  *Javor v.

25  Taggart*, 98 Cal.App.4th 795, 807, 120 Cal.Rptr.2d 174 (2002) ("It is beyond question that a plaintiff

26  is not entitled to damages for a violation of the due process clause or the equal protection clause of the

27  state Constitution."); *see also Degrassi v. Cook*, 29 Cal.4th 333, 335, 127 Cal.Rptr.2d 508 (2002) (no

28  private right of action for damages for violation of free speech clause of California Constitution).   A

1    plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause

2    of the state Constitution. *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services*, 83 Cal.App.4th

3    809, 815-823, Cal.Rptr.2d 87 (2000) (due process); *Gates v. Superior Court,* 32 Cal.App.4th 481,

4    516-524, 38 Cal.Rptr.2d 489 (1995) (equal protection.)

5       To the extent plaintiff seeks monetary damages for California Constitutional violations, those

6    claims are  inconsistent with California law.  Accordingly, the Court grants the motion to dismiss as to

7    plaintiffs' claims for damages under the California Constitution.

8                        **CONCLUSION**

9       For the foregoing reasons, the motion to dismiss is GRANTED with leave to amend, to conform

10    to the requirements as stated in this order.  Plaintiff shall have 20 days from the service of this order to

11    file an amended complaint.

12    IT IS SO ORDERED.

13    **Dated:     October 2, 2009                /s/ Lawrence J. O'Neill**

14                         UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28