IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V. STEVEN BOOTH,<br><br>        Plaintiff,<br><br>   v.<br><br>SCOTT CARVELL, AL ROGERS,<br><br>        Defendants.<br>_____ / | CASE NO. CV-F-08-1912 LJO GSA<br><br>**ORDER ON DEFENDANTS'<br>MOTION TO DISMISS THE SECOND<br>AMENDED COMPLAINT** |

By notice filed on October 30, 2009, defendants Scott Carvell and Al Rogers move pursuant to Rule 12(b)(6) to dismiss the plaintiff's Second Amended Complaint. Plaintiff V. Steven Booth filed an opposition on December 3, 2009. The hearing was VACATED pursuant to Local Rule 230(g). The Court did not need a responsive brief on behalf of defendants. Having considered the moving and opposition papers, as well as the Court's file, the Court issues the following order.

**FACTUAL OVERVIEW**

This is the second motion on the operative facts of the complaint. The Second Amended Complaint ("SAC") realleges violations arising from a search and seizure of records at plaintiff's business premises.

Plaintiff Steven Booth alleges that on April 15, 2008, defendant Carvell, Rogers and others executed a search warrant at his place of business. (Doc. 35, SAC ¶ 7.) He alleges that the warrant failed to identify any purported violations of the law, that it did not have an affidavit supporting the warrant and that the affidavit supporting warrant was not served on him. (Doc. 35, SAC ¶ 8.) The SAC alleges

that the warrant authorized the seizure of "virtually any document found." (Doc. 35, SAC ¶9.) Plaintiff alleges the warrant was overbroad because it permitted seizure of "virtually any document found and any computer equipment and software, business licenses, financial agreements, postal mail, rolodex cards, publications (including some made by plaintiff) but failed to identify any time-frame of the items to be seized." (Doc. 35, SAC ¶¶ 9-10.) He complains also that the warrant authorized "the seizure of at least one patient file," and "documents that would show 'lists of patient.'" (Doc. 35, SAC ¶ 11.) Plaintiffs claims that the warrant was not regular on its face, given the breadth of the items required to be seized by the warrant, and that no criminal activity was identified in the warrant. (Doc. 35, SAC ¶ 12.) Plaintiff alleges the warrant was facially overbroad in view of the alleged seizure of protected items such as publications and information regarding the doctor-patient relationship. (Doc. 35, SAC ¶13.) Plaintiff claims that defendants Rogers executed the unlawful warrant and in doing so conducted an extensive search of his business premises and seized "numerous documents and items of property." (Doc. 35, SAC ¶ 14.)

Plaintiff sues for constitutional violations pursuant to 42 U.S.C. § 1983, alleging that the search warrant was overbroad, facially invalid, and based on fraudulent affidavits. Plaintiff alleges the following causes of action:

1. First Cause of Action for unreasonable search and seizure in violation of the Fourth Amendment.
2. Second Cause of Action for unreasonable search and seizure based on false information in violation of the Fourth Amendment.
3. Third Cause of Action for unreasonable search and seizure under State Law.
4. Fourth Cause of Action for failure to instruct, supervise, control and discipline.

Defendants move to dismiss the Second Amended Complaint on the grounds that:

1. The SAC fails to allege any factual allegations which support a cause of action as to either Carvel or Rogers.
2. Defendants Carvel and Rogers are entitled to Immunity in executing the search warrant.
3. Carvel and Rogers are entitled to Qualified Immunity.
4. The Third Cause of Action for "unreasonable search and seizure in violation of state law"

1           is unclear and incomplete.

2 Defendants also move for a more definitive statement as to each cause of action.

3 <center>**ANALYSIS AND DISCUSSION**</center>

4 **A.     Standard for Motion to Dismiss**

5        A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the
6 pleadings set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either
7 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
8 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion
9 to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint
10 in question, construes the pleading in the light most favorable to the party opposing the motion, and
11 resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir.
12 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

13        To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief
14 that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).
15 A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw
16 the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal*, – U.S.
17 –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual
18 content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling
19 the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.2d 962, 969 (9th Cir. 2009).

20        A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences
21 and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*
22 *American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint attacked
23 by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation
24 to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a
25 formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct.
26 1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when
27 construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a
28 cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In

practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969. If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**B.    The Search Warrant**

The Fourth Amendment establishes the right "to be secure in . . . persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates issuance of warrants with "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Plaintiff alleges that the warrant was invalid on its face and overbroad under the Fourth Amendment.

**1.    Search Warrant Standards - Probable Cause**

California Penal Code section 1524(a)(4) authorizes a search warrant's issuance when "the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony." In assessing whether a warrant passes constitutional muster, a court is obliged to make two inquiries: first, whether the scope of the search authorized by the warrant was justified by probable cause and, second, whether the warrant was sufficiently particular to limit the discretion of the officers executing it. *In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 856 (9th Cir. 1997).

In making a probable cause determination, a court's role is to ensure that the judge issuing the search warrant had a "substantial basis" to conclude probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332 (1983); *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362 (1985). "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

"[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584 (1969)). "The facts . . . must be sufficient to justify a conclusion . . . that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued." *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968). In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6, 98 S.Ct. 1970, 1976-1977 & n. 6 (1978); *United States v. Lalor*, 996 F.2d 1578, 1582 (9th Cir.), *cert. denied*, 510 U.S. 983, 114 S.Ct. 485 (1993). "The magistrate making the original determination of probable cause is accorded significant deference by the reviewing court." *United States v. Fulbright*, 105 F.3d 443, 452 (9th Cir. 1996), *cert. denied,* 520 U.S. 1236 (1997).

Plaintiff does not allege that the warrant lacked probable cause, at least as to the moving defendants. The allegations target the format and wording of the warrant. "The purported warrant cited no alleged violations of any laws (state or federal), and failed to identify any link between any criminal activity and the items to be seized." (Doc. 35, SAC ¶8.) The SAC also challenges the scope of the documents listed in the warrant to be seized: "The warrant purported to authorize the seizure of virtually any document found . . .;" and "[i]t also purports to authorize seizure of any letters, memoranda . . ." (Doc. 35, SAC ¶¶9-10.) Thus, the Court turns to whether the warrant was sufficiently particular to limit the discretion of the officers executing it.

**2.      Whether the Warrant was Sufficiently Particular and Resulting Qualified Immunity**

   **a.      Warrant Particularity**

The second issue the Court must consider is whether the warrant was sufficiently particular to limit the discretion of the officers executing it. *In re Grand Jury Investigation,* 130 F.3d at 856. The Fourth Amendment prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004), *cert. denied*, 544 U.S. 955 (2005). A valid warrant must describe particularly the places that officers may search and the types

of items that they may seize. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986). However, the search warrant need only be reasonably specific, rather than elaborately detailed. *Mann*, 389 F.3d at 877 (quoting *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir.1996)). "[T]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *KRL v. Estate of Moore*, 512 F.3d 1184, 1187 (9th Cir. 2008).

Here, the warrant was phrased with specificity in the categories of documents, and relationship between the documents, which were subject to the search. For instance, the document categories had qualifying language such as documents "that would tend to establish a business relationship" between the business and specific people identified in the warrant. (Doc. 23, Warrant, attachment 5.) The warrant also included other qualifying language such as documents, "which show an indicia of ownership and occupancy." This warrant language arguably sets out objective standards by which officers could "differentiate items subject to seizure from those which are not." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) ("[w]arrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible.") Nonetheless, some of the language may be overly broad. As the evidence currently before the Court shows, the warrant calls for a seizure of "electronic storage devise capable of storing electronic data," or "contracts, marketing materials. . ." The only possible criminal activity, from the face of the warrant, is "fraud." The warrant mentions potential "fraud," but the link between the activity and the documents may arguably be absent. In *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982), the Ninth Circuit held that a warrant must contain information "limiting the search to evidence of particular criminal episodes."

### b. Qualified Immunity

Given this ambiguity in the warrant particularity, defendants argue that, as executing officers, they are immune from liability for executing the search warrant and that they are immune for any other related conduct. Defendants argue that any ambiguity or deficiency is not glaring warrant defects such that they are exposed to liability. Defendants argue that California Penal Code §1523 commands a police officer to search for the things identified in the search warrant and they were obligated to serve the search warrant.

Where a constitutional violation occurs, a police officer is entitled to qualified immunity if he

acted reasonably under the circumstances. *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2007). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272, outlined a two-step approach to qualified immunity. The first inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. Recently, the Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court further stated that "the judges of the district courts and the courts of appeals are in the best position to determine [what] order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id.* at 821.

Here, the allegations in the SAC as to the potential liability for Carvell and Rogers are:

> 7. On April 15, 2008, defendants Carvel[l], Rogers, and some unknown Doe defendants appeared at plaintiffs' place of business to execute an alleged search warrant." (Citation to warrant omitted.)
>
> 8. The purported warrant cited no alleged violations of any laws whatsoever (state or federal), and failed to identify any link between any criminal activity and the items to be seized. No affidavit in support of the warrant accompanied it at the time of execution or was ever served on plaintiff at any time.
>
> 9. The warrant purported to authorize the seizure of virtually any document found, and any computer equipment and software, business licenses, financial agreements and records, postal mail, rolodex cards, publications (including some made by plaintiff), and more, but failed to identify any time-frame of the items to be seized, or even any link between any criminal activity and the items to be seized.
>
> 10. It also purported to authorize the seizure of any letters, memoranda, faxes, emails or any other communication documents that 'would tend to establish a business relationship between' plaintiff and certain parties from December 2003 to the date of the warrant. Once again, the warrant failed to suggest any link between any criminal activity and the items to be seized.
>
> 11. It also purported to authorize the seizure of at least one patient file,

1           and documents that would show 'lists of patients.'" (Doc. 35, SAC ¶¶8-
2           11.)

3       What is reasonable for a particular officer depends on the officer's particular role in the search.

4 *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002), *cert. denied,* 537 U.S. 1231

5 (2003). As the Ninth Circuit has explained:

6     Because searches often require cooperation and division of labor, officers' roles can vary
    widely. Typically, only one or a few officers plan and lead a search, but more--perhaps
7     many more--help execute it. The officers who lead the team that executes a warrant are
    responsible for ensuring that they have lawful authority for their actions. A key aspect
8     of this responsibility is making sure that they have a proper warrant that in fact authorizes
    the search and seizure they are about to conduct. The leaders of the expedition may not
9     simply assume that the warrant authorizes the search and seizure. Rather, they must
    actually read the warrant and satisfy themselves that they understand its scope and
10     limitations, and that it is not defective in some obvious way.

11 *Ramirez v. Butte-Silver Bow County*, 298 F.3d at 1027 (citations omitted); *See United States v. Leon*,

12 468 U.S. 897, 922-23, (1984) (search pursuant to a warrant is invalid if no reasonable officer could have

13 believed the warrant was valid). As further explained by the Ninth Circuit:

14     Line officers, on the other hand, are required to do much less. They do not have to
    actually read or even see the warrant; they may accept the word of their superiors that
15     they have a warrant and that it is valid. So long as they 'make inquiry as to the nature and
    scope of [the] warrant, their reliance on leaders' representations about it is reasonable.
16

17 *Ramirez v. Butte-Silver Bow County*, 298 F.3d at 1027 (citations omitted).

18       Here, plaintiff has alleged that Scott Carvell and Al Rogers are sued in their individual capacities

19 and as the officers executing the search warrant. Plaintiff alleges that both officers were "leaders" in

20 the search warrant execution. (Doc. 35, SAC ¶¶4-5.) *Ramirez* requires that officers who lead a team

21 that executes a search warrant must read the warrant and "satisfy themselves that they understand its

22 scope and limitations, and that it is not defective in some obvious way." *Ramirez*, 298 F.3d at 1027.

23 Accordingly, the officers had some responsibility for ensuring the warrant was not defective in some

24 way.

25       Assuming the truth of the allegations, as the Court must, the allegations state that the officers

26 lead the execution of the search. The law imposes an obligation upon the officers who are leaders of a

27 search. Whether the officers acted reasonably in that role is a factual determination. For qualified

28 immunity, the "underlying inquiry is the <u>reasonableness</u> of the officer's conduct." *KRL v. Estate of*

*Moore*, 512 F.3d at 1192 -1193 (emphasis in original). The factual nature of the role each defendant officer played in the warrant execution precludes the ruling on qualified immunity at this point of the litigation. The allegations state that the warrant the officers executed did not state the criminal activity for which the search was conducted and thereby could not limit the officers search, the warrant was broad in scope and the items confiscated were not within the scope of the warrant. The warrant is not before the Court, the portions of the warrant possessed by defendants are not before the Court, and the facts pertaining to the search are not before the Court. What defendants knew and did are not before the Court. Therefore, the Court cannot determine whether defendants are entitled to qualified immunity at this stage in the litigation.

**C.     The Third Causes of Action and Federal Pleading Standards**

The Third Cause of Action for Unreasonable Search/Seizure under state law alleges that defendants violation plaintiff's state law rights against unreasonable search and seizure.

**1.     Pleading Standards as Set Forth in *Ashcroft v. Iqbal***

The Supreme Court, in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), clarified *Twombly*'s reach in evaluating pleadings. *Iqbal* concerned claims against a number of defendants, including FBI Director Mueller and Attorney General Ashcroft, made by Javaid Iqbal, a Muslim Pakistani who was part of the mass roundup of Muslim aliens on immigration charges following the September 11 attacks. *Iqbal* claimed that Mueller and Ashcroft were responsible for selectively placing detainees in their restrictive conditions on account of their race and religion. *Id.* at 1951. The Supreme Court found the allegations in the complaint insufficient to state a discrimination claim under the above-discussed *Twombly* "plausibility" standard. *Id.* at 1952. The Court held that a pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " is insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Supreme Court stated the analysis is to "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. The next step is to consider the factual allegations in the complaint to determine

if they plausibly suggest an entitlement to relief. *Id.* at 1951. "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949.

**2.     The Allegations of the Third Cause of Action do not Meet the *Iqbal* Standard**

The complete allegations of the Third Cause of Action state in full:

> 20.    The above paragraphs are incorporated herein.
>
> 21.    The acts of defendants Carvel, Rogers, and unknown DOES violated plaintiff's state law rights against unreasonable search and seizures, and plaintiff seeks injunctive relief against the defendant's continued possession of the items they seized.

Plaintiff argues that he is in pro se and that he is held to a lesser pleading standard. A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, , 127 S.Ct. 2197, 2200 (2007). When a plaintiff proceeds pro se, the district court is required to "afford [him] the benefit of any doubt" in ascertaining what claims he "raised in his complaint and argued to the district court." *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008).

Defendants offer evidence that plaintiff is an experienced pro se litigator and offer evidence of several prior filings by plaintiff. (Doc. 37, Request for Judicial Notice.) Nonetheless, for this point in the litigation, the Court considers that plaintiff is in pro se seeking relief for constitutional violations and will not hold him to a higher pleading standards.

The allegations of the Third Cause of Action incorporate the preceding allegations for search and seizure constitutional violations. It is common practice to incorporate by reference in later claims for relief various allegations made in earlier claims (typically allegations as to jurisdiction, venue, parties, sequence of events). Properly used, such incorporation promotes simple, concise pleadings. *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). In this instance, the Court finds that the preceding factual allegations are sufficient to put the defendants on notice as to their alleged wrongful conduct.

**3.     The Allegations of the Fourth Cause of Action do not Meet the *Iqbal* Standard**

The fourth cause of action for failure to instruct, supervise, control and discipline is equally insufficient under *Iqbal*. The claim incorporates all preceding allegations and states in a conclusory

fashion:

> 23. At all relevant times, the defendants executing the warrants were acting under the direction and control of the unknown DOE superiors and supervisors.
>
> 24. Acting under color of state law, the unknown DOE superiors and supervisors intentionally, knowing, recklessly and with deliberate indifference to the rights of the inhabitants of the area failed to instruct, supervise, control and/or discipline the defendants who executed the warrants to refrain from conducting unlawful searches and seizures, and otherwise depriving citizens of their constitutional and statutory rights, privileges and immunities.
>
> 25. Defendant unknown DOE superior and supervisors had knowledge or should have had knowledge that the wrongs alleged herein were going to be committed and had the power to prevent, or aid in preventing, the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of inhabitants of the area, failed or refused to do so. (Doc. 35, FAC ¶¶23-25.)

Plaintiff has failed to allege any factual support for his claims of supervisor liability under section 1983. Supervisors can be held liable under § 1983 for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (citing *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir.1991)). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal,* 129 S.Ct. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Plaintiff has alleged no facts indicating any personal involvement by defendants. The fact that each of the DOE defendants holds a supervisory position alone, does not render them liable for conduct of their staff. The fourth cause of action alleges no more than what the Supreme Court explicitly warned against, "a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1949. These claims are factually insufficient pursuant to the *Iqbal* standard.

The Court previously granted plaintiff leave to file a first amended complaint. The First Amended Complaint failed to add any factual allegations which could be facially plausible to a claim. The allegations remain conclusory and without factual content. The complaint's "non-conclusory factual

content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted), citing *Iqbal*, 129 S.Ct. at 1949, ("A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")   Plaintiff failed to add any additional factual content such that this claim could be alleged with facial plausibility.  Since plaintiff was granted leave to amend the complaint to state factually sufficient allegations and has failed to so amend the complaint, the Court has discretion to deny leave to amend.  A district court's discretion to deny an amendment "is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Because Plaintiff was granted an opportunity to his complaint to add factual content to this claim, yet failed to do so, the Court denies leave to amend the Fourth Cause of Action.

**D.      Second Cause of Action for Unreasonable Search based upon False Information**

The Second Cause of Action does not appear to name either of the moving defendants.  In their motion, defendants indicate that "by review and reference of the within allegations, it appears that the Second Cause of Action is applicable only to 'one of the unknown DOE defendants.'" (Doc. 36, Moving papers p. 3.)  Defendants' motion does not challenge the Second Cause of Action.  Accordingly, as the Second Cause of Action does not name defendants and the motion does not specifically challenge the cause of action, the Court does not rule on the Second Cause of Action.

/////
/////
/////
/////
/////
/////
/////
/////
/////

**CONCLUSION**

For the foregoing reasons, the Court Orders as follows:

1. The motion to dismiss is DENIED as to the First Cause of Action.
2. The motion to dismiss is DENIED as to the Third Cause of Action.
3. The motion to dismiss is GRANTED without leave to amend the Fourth Cause of Action.

IT IS SO ORDERED.

**Dated:   December 7, 2009**                    /s/ Lawrence J. O'Neill
                                                UNITED STATES DISTRICT JUDGE